**In re TANKER et al.**

[Cite as *In re Tanker* (2001), 142 Ohio App.3d 159.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77346.

Decided April 2, 2001.

*William D. Mason,* Cuyahoga County Prosecuting Attorney, *Frederick R. Audi, Cara L. Santosuosso* and *Lynn Stewart,* Assistant Prosecuting Attorneys, for appellant.

*James A. Draper,* Cuyahoga County Public Defender, and *Patricia Koch Windham,* Assistant Public Defender, for appellee Pamela Tanker, mother.

*Patricia Plotkin,* for appellee Ricardo Tanker, father.

*Susan M. Glatki* and *Linda M. Julian,* guardians *ad litem.*

---

MICHAEL J. CORRIGAN, Judge.

Brothers and sisters Sherry and Laurico Tanker, and Siera and Helen Collier (we shall refer to them collectively as "children"), children of parents Pamela (née Collier) and Ricardo Tanker, were committed to long-term foster care after being declared neglected. Appellant Cuyahoga County Department of Children and Family Services sought permanent custody of the four children with an eye toward placing them through adoption. The juvenile court denied the motion, finding by clear and convincing evidence that continued long-term foster care would be in the children's best interests. The agency appeals, and the issue is whether the court abused its discretion when denying the motion for permanent custody.

The record on appeal is limited to a partial transcript, an App.R. 9(C) statement of the evidence, and the exhibits admitted during the hearing. The children were separated from the parents in early 1993, when police responding to a domestic violence call at the parents' house noticed the children bore signs of physical abuse. The parents admitted that the children were "neglected" and the court found that the parents were unable to provide care for the children due to their own physical or mental problems or needs. The court further found that adoption was not in the best interest of the children, and that the children retained a significant and positive relationship with the parents. The children were placed into long-term foster care (now euphemistically referred to as a "planned permanent living arrangement"). The parents were granted supervised visitation and ordered to continue parent education classes.

In August 1997, the agency filed a complaint seeking permanent custody of the children. The complaint alleged that the parents had not completed the parent education classes, had failed to exercise visitation, and had not demonstrated an ability to provide a safe environment for the children.

The court did not conduct a hearing on the motion until October 1999. At the time, the four children had been continuously residing together with the same foster parents. Some of the children had emotional or behavioral problems. A clinical counselor gave his opinion that permanent custody was in the children's best interests. It appears that the parents' visitations were discontinued at some point, and the children's behavior and emotional states began to improve. The counselor did admit that his involvement with the case ended in June 1997.

A social worker testified that she began participating in the case in January 1998, and that no visits were occurring at that time. Visitation resumed in

October 1998 at the request of the children's guardian *ad litem,* and the children were interested in seeing their parents and one younger sibling who lived with the parents. The two younger children (then ages six and seven) did not recognize the parents. During the visit, the father told the children that he was dying and that their mother recently had an abortion.

The social worker said that some of the children reacted poorly to the visit. One of the children punched holes in the wall of the foster parents' house; another regressed into bedwetting. The social worker said that the oldest of the four children wrote to the court informing it that she did not want to leave the foster parents' home.

On cross-examination, the social worker said that she believed that the placement with the foster parents was a good one. The children were bonded with the foster parents and the social worker believed that it was important to maintain stability for the children. Unfortunately, the foster parents had no willingness to adopt the children—they were both in their sixties and willing to continue with foster care indefinitely, but were unwilling to adopt the children because the adoption subsidy was less than the foster care subsidy.

The guardian *ad litem* for the children reported that she instituted visitation after learning that the parents had completed parenting classes as required but were not permitted visitation. It appears that visitation had been terminated by a judge who previously presided over the matter, but the record contains no journal entry to that effect. The guardian noted that the parents sought to visit with their children throughout but were told the court had prohibited visitation. This lasted for two years.

When visitation finally resumed, it went well except for the behavior of the father who, as noted, made inappropriate comments about his health and the mother having had an abortion. The mother, on the other hand, exhibited entirely appropriate behavior and the children seemed to warm to her. The guardian recommended that the mother be granted further visitation but that father undergo additional counseling before being allowed to resume visitation with the children.

The guardian recommended that the children be kept together. They had "flourished" under foster care and bonded to the foster parents. Recognizing that adoption by a party other than the foster parents was highly improbable, the guardian recommended that it would be in the best interest of the children to maintain the status quo and continue long-term foster care.

Following the hearing, the court issued a judgment entry that contained the following relevant findings:

"The Court finds that the allegations of the motion have not been proven by clear and convincing evidence. * * * The Court finds that the continued residence of the children in [the parents'] home would be contrary to the [*sic*] best interests and welfare. The Court finds that children cannot be placed with a relative because relatives are unable to provide care and support for said children. * * * There is clear and convincing evidence that Planned Permanent Living Arrangement is in the best interest of the children in that: The children are unable to function in a family-like setting and must remain in residential or institutional care because of their physical needs. The parent(s) are unable to provide care for the children due to their own physical or mental problems or needs, adoption is not in the best interest of the children and the children retain a significant and positive relationship with a parent or relative."

## I

The first assignment of error challenges the court's decision to continue long-term foster care in lieu of permanent custody that would lead to adoption. The agency maintains that (1) the court's determination that it would be in the children's best interest to remain in long-term foster care with the foster parents is against the weight of the evidence and (2) the children do not meet the statutory criteria for permitting long-term foster care.

In terminating parental rights and awarding permanent custody of a child who is neither abandoned nor orphaned to a public children's services agency, a juvenile court must find by clear and convincing evidence that (1) permanent custody to the agency is in the best interest of the child and (2) one of the factors enumerated in R.C. 2151.414(B)(1) applies. See *In re William S.* (1996), 75 Ohio St.3d 95, 99, 661 N.E.2d 738, 741–742; *In re Patterson* (1999), 134 Ohio App.3d 119, 730 N.E.2d 439. The relevant factor is contained in R.C. 4121.414(B)(1)(a): the child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

R.C. 2151.414(D) sets forth the factors that a court must consider in order to determine whether granting permanent custody to a public agency would be in the best interest of the child. This statute states in relevant part:

"(D) In determining the best interest of a child at a hearing [on the issue of permanent custody] * * * the court shall consider all relevant factors, including, but not limited to, the following:

"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;

"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public services agencies or private placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 8, 1999;

"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

"(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

## A

We cannot find that the court abused its discretion by denying the agency's motion for permanent custody because the evidence supported the court's determination that continued long-term foster care would be in the best interests of the children.

The court recognized that all four children had been together in foster care. There seemed to be no disagreement that permanent custody leading to adoption would break up the children, and there also seemed to be no disagreement that none of the children was likely to be adopted. The children each had special needs, all of which were being met by the foster parents. In short, as the guardian *ad litem* noted, the foster home provided the children with a stable home environment and support for their physical and emotional needs.

The court knew that the foster parents who provided this stable environment for the children were unwilling to adopt the children. The foster parents are in their sixties and candidly said that the adoption subsidy was less than the foster care subsidy, so adoption would not make financial sense. Certainly, the prospects for anyone else adopting one child, much less all four, remained remote. So the court rationally decided that continuing foster care under these circumstances was preferable to the inevitability of breaking up the family.

The court also heard testimony that the parents were not a lost cause. The guardian *ad litem* noted that both parents had completed parenting classes and the mother, in particular, exhibited promising behavior at visitation. The agency's evidence showing the parents' lack of fitness was mostly stale, featuring, for example, the testimony of two social workers who had not seen the parents for at least two years. The agency's only witness who could competently testify to recent events said that the children were "well-behaved" during their visit.

It is true that the father engaged in inappropriate discussions with the children, and that some of the children appeared to regress after the visits. But the agency's witness could say only that the visit had been stressful to the children, not that the conduct of the parents directly caused the regressive behavior. Certainly, the court could consider the guardian *ad litem's* recommendation that the mother be allowed to continue with visitation alone, without the father, as an indication that at least one of the parents demonstrated progress toward established parenting goals. That fact alone would suggest that permanent custody was not the best solution.

## B

The agency's second argument is that the court erred by extending long-term custody because the children do not meet the criteria for a planned permanent living arrangement, primarily disagreeing with the court's finding that the children are unable to function in a family-like setting and that they retain a significant and positive relationship with their parents.

In a planned permanent living arrangement the juvenile court grants a children services agency legal custody of a child without terminating the parent's parental rights. R.C. 2151.011(B)(27). The children services agency is then permitted to make an appropriate placement for the child and to enter into a written agreement regarding that placement. Prior to placing the child in a planned permanent living arrangement, the juvenile court must find, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child and that the parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with R.C. 2151.414(D), and the child retains a significant and positive relationship with a parent or relative. R.C. 2151.353(A)(5)(b). See *In re Campbell* (Oct. 12, 2000), Cuyahoga App. Nos. 77552 and 77603, unreported, 2000 WL 1514365.

## 1

The court did not abuse its discretion in finding that the children qualified for a planned permanent living arrangement because there was competent, credible evidence to show that the children are unable to function in a family-like setting and must remain in residential care. The children have special needs that would likely make it impossible to place them in an ordinary adoptive household. The agency maintains that the children's residence in the foster home is "family-like," thus showing that they can exist in a place other than residential or institutional care. But this argument misses the point—the foster parents are

specifically trained to deal with the type of emotional and behavioral problems these children possess, so it cannot be said that the current foster home is akin to a true "family-like" setting. Hence, while it is certainly true that the foster parents have successfully established a "family," it does not follow that their success suggests that these troubled children could live in any "home." The court could rationally consider that these foster parents have established a family-like home for the children precisely because they have special skills that potential adoptive parents might lack.

## 2

The agency next argues that the court abused its discretion by finding that the parents are unable to provide care for the children because of their own physical and mental problems or needs. The agency agrees in the abstract that the parents are unable to provide a safe and appropriate environment for the children but claims that is because of the abuse and neglect upon the children, not because of any physical or mental problems. It further maintains that the parents' failure to recognize the scope of their actions has forced the agency to abandon, since at least 1996, any plans for reunification. See Appellant's Brief at 12.

The agency's argument tries to draw a fine line between a physical or mental condition that renders one incapable of providing care for a child as opposed to failing to recognize the reasons that forced the removal of the child in the first place. The agency claims that the parents continue to deny that the children suffered abuse and neglect at their hands, and they remain unfit to parent the children for that reason.

The agency contradicts its own argument about abandoning all hope of reunification when it goes on to note that from December 1996 to June 1997 it tried to reestablish a relationship between the parents and the children. See Appellant's Brief at 9. In fact, the record shows that as of October 1996, both parents had completed four hundred twenty hours of parent education classes that covered the principles of social learning, child management, and parent-child relationships. Had all hope been abandoned in 1996, the question remains: why weren't these efforts at parent education and reestablishing a relationship terminated? The court could rationally look at these efforts as a significant step toward alleviating the situation that led to the children being removed.

We also consider that the parents were involuntarily denied visitation for almost two years, thus handicapping their opportunity to reestablish a relationship with the children. There is some dispute whether the court terminated visitation, for there is no order to that effect in the record. But the testimony at the hearing showed rather conclusively that all parties believed that the court had

terminated visitation, so it cannot be said that the parents voluntarily relinquished that right at the expense of reestablishing their relationship with the children.

When visitation did resume, the mother, at least, showed promise in reestablishing her relationship with the children. Some, but not all, of the children responded well to the visit. It might be expected that the children, who had not lived with their parents for many years, would have some difficulty in warming to the visits. The court could reasonably consider this visitation as a first step toward reestablishing a parental relationship without the drastic step of granting permanent custody to the agency. Obviously, the parents have some ways to go in providing for the children, but the court did not consider all hope to be lost. The evidence reasonably sustains this finding.

## II

The second assignment of error complains that the court erred in failing to consider the best interests of the children over that of the parents. The agency maintains that the court's perpetuation of long-term foster care leaves the children in a custodial "limbo" without the hope of permanency.

The case in a nutshell comes down to this: everyone agrees that the children are making progress in their current foster home and that they wish to remain together as a family, but the foster parents have no desire to adopt the children because of their advanced age, the lack of respite services that might be available to them as adoptive parents, and the lower subsidy they would receive as adoptive parents. The foster parents have expressed a desire to keep the children in foster care indefinitely. At this time the children wish to remain with the foster parents. Even the agency's witnesses agreed that the children have bonded to the foster parents and the foster home is the best place for the children. This is a classic example where the use of P.P.L.A. is the common-sense manner within which the "best interests of the children" are satisfied and the status quo is appropriately maintained.

With these undisputed facts the court had a choice—it could continue foster care or it could grant permanent custody to the agency. Granting permanent custody to the agency would almost surely ensure that the children would be separated. Because the children have emotional and physical needs, it would be difficult to place them individually, much less as a group. We have little difficulty finding that the court acted in the best interests of the children in continuing long-term foster care.

The agency contends that the foster parents could not adequately consider adopting the children when they were not legally free for adoption. This is a

reckless argument. The foster parents have clearly expressed their views. We fail to see what purpose it would serve to put the children in the agency's permanent custody for the sole purpose of forcing the foster parents' hand in adoption.

The court's decision was in all respects supported by competent, credible evidence. No abuse of discretion has been shown. The assigned errors are overruled.

*Judgment affirmed.*

FRANK D. CELEBREZZE, JR., J., concurs.

KARPINSKI, A.J., concurs in judgment only.

KARPINSKI, Administrative Judge, concurring in judgment only.

I concur with the majority in judgment only, because I disagree with the majority in its analysis of the parents. Moreover, I believe there is another argument.

Because these children have significant developmental, emotional, and behavioral problems, they require parents with special skills such as the present foster parents have. Because of these special needs, it is not likely that the children would be adopted as a group, and it is unlikely that four different sets of parents with these skills could be found.

According to R.C. 2151.353, one of the criteria under which the court may order long-term foster care is that "the children retain a significant and positive relationship with a parent or relative." I realize that the intent of the legislature was probably to interpret "relative" as an adult. However, the facts in this case justify a broader interpretation. For seven years these children have lived as a family. The family therapist recommended that the children stay together and so did the guardian *ad litem*, who reported that Sherry, who is fourteen, "is almost ready for high school. She sets the model for the other children to follow and keeps them in line when necessary." These children have a significant and positive relationship with each other, as well as with their foster parents. That is worth preserving. Because it is not likely they would be adopted as a group, putting them up for adoption is likely to destroy that relationship.

Thus I would hold that the statute's requirement is met in so far as Sherry is a relative with whom the other children have a significant and positive relationship. On that basis I would affirm the trial court's decision to order a planned permanent living arrangement rather than awarding the county permanent custody with the intent to place them for adoption.