MILLER et al., Appellees,

v.

GREENE COUNTY CHILDREN'S SERVICES BOARD, Appellant.

[Cite as *Miller v. Greene Cty. Children's Serv. Bd.,*
162 Ohio App.3d 416, 2005-Ohio-4035.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 2005–CA–16.

Decided Aug. 5, 2005.

Charles Bursey II and Jennifer S. Getty, for appellees.

William F. Schenck, Greene County Prosecuting Attorney, and Thomas C. Miller, Assistant Prosecuting Attorney, for appellant.

Cynthia Lennon, guardian ad litem.

---

FAIN, Judge.

{¶ 1} The Greene County Children's Services Board ("GCCS") appeals from an order of the Greene County Court of Common Pleas, Juvenile Division, placing Stephan Miller in a planned permanent living arrangement ("PPLA"). GCCS contends that the order is not supported by the evidence.

{¶ 2} We conclude that the record contains evidence supporting the trial court's determination that a PPLA is the appropriate disposition at this time. Accordingly, the judgment of the trial court is affirmed.

I

{¶ 3} Stephan Miller, who was born in 1990, suffers from Down syndrome. In 2002, Stephan was adjudicated dependent. Temporary custody was awarded to GCCS. During the time he was in the temporary custody of GCCS, Stephan had to be removed from two separate foster homes due to allegations of neglect and abuse. He was then placed with his current foster family, where the record indicates that he is doing well.

{¶ 4} In 2004, GCCS filed a motion seeking permanent custody of Stephan. The guardian ad litem ("GAL") filed a motion seeking a modification of temporary custody to a PPLA, pursuant to R.C. 2151.353. After a hearing, the trial court entered an order modifying temporary custody to a PPLA and made the following findings:

{¶ 5} "Stephan Miller, born January 4, 1990, is a child with special needs. He has a severe form of Down's Syndrome. Stephan's IQ has been measured at 40. His communication skills are extremely limited. Stephan needs a lot of direction from those who supervise him (foster parent, teacher) but has some self-help skills: dressing, eating and using the bathroom. He has a pacemaker, has suffered two strokes, has asthma, and often uses a wheelchair.

{¶ 6} " * * *

{¶ 7} "Since being in the agency's custody, Stephan has been in three foster homes. He was removed from the first two placements due to the caretakers' mistreatment of other children in the home.

{¶ 8} "Stephan has been in his current foster home since April, 2004. He has grown attached to his foster parents, especially the wife in this couple, who Stephan calls 'Mom'. There are five other foster children in this placement and Stephan has developed a bond with the three older ones. [The foster mother has] several nephews and a niece who have 'taken to Stephan'.

{¶ 9} "[The natural mother] has had contact with Stephan through visitation arranged by CSB and at hospitals when Stephan has needed medical care. For the most part, the visits are positive experiences. Stephan does recognize his mother and is happy to see her.

{¶ 10} "Stephan's foster parents have adopted children with learning disabilities. [The foster mother] has received special training from Stephan's physicians to respond to Stephan's serious medical needs.

{¶ 11} "No adoptive placement has been identified. [The foster parents] have not made a decision on that issue. Stephan's multiple disabilities will make it more difficult to find an adoptive placement. CSB intends to contact outside sources (private adoption agencies, internet search, Down's Syndrome Association of Cincinnati) to locate prospective adoptive parents.

{¶ 12} "The guardian ad litem has recommended that Stephan be placed into a Planned Permanent Living Arrangement.

{¶ 13} "Because of Stephan's physical, mental and medical problems and needs, he is unable to function in a family-like setting and must remain in residential or institutional care.

{¶ 14} "It is in Stephan's best interest to be placed into a Planned Permanent Living Arrangement."

{¶ 15} GCCS appeals from this order.

II

{¶ 16} The sole assignment of error follows:

{¶ 17} "The trial court's determination that the child is unable to function in a family-like setting and must remain in residential or institutional care is against the manifest weight of the evidence. There is absolutely no competent or credible evidence in the record to demonstrate those facts. As such, the trial court's decision could not be based upon either some competent and credible evidence, and thus, obviously cannot be based upon substantial competent and credible evidence.

{¶ 18} Additionally, the absence of sufficient competent and credible evidence on the whole record constitutes a lack of clear and convincing evidence and constitutes an abuse of case discretion."

{¶ 19} This assignment of error challenges the trial court's decision to place Stephan in a PPLA in lieu of permanent custody. GCCS maintains that the trial court's determination that Stephan falls within the statutory criteria for permitting long-term foster care is not supported by the evidence.

{¶ 20} A planned permanent living arrangement, formerly called long-term foster care, "is an alternative form of custody in which the child is placed in a foster home or institution, with the intention that the child will remain in that home or institution until he is no longer in the county child services system." *In re D.B.*, Cuyahoga App. No. 81421, 2003-Ohio-3521, 2003 WL 21511310, ¶ 6. "A PPLA does not sever the parental bonds as permanent custody does, but it also does not provide the child with a legally permanent placement." Id.

{¶ 21} Pursuant to R.C. 2151.353(A)(5), a PPLA is appropriate if the court finds, by clear and convincing evidence, that it is in the best interest of the child and one of the following conditions is met:

{¶ 22} (1) the child is unable to function in a family-like setting because of physical, mental, or psychological needs that necessitate that the child remain in residential or institutional care. R.C. 2151.353(A)(5)(a);

{¶ 23} (2) the parents have significant physical, mental, or psychological problems that prevent them from caring for the child, adoption is not in the best interest of the child, and the child retains a significant and positive relationship with a parent or relative. R.C. 2151.353(A)(5)(b); or

{¶ 24} (3) the child is 16 years of age or older and is unwilling or unable to adapt to a permanent placement. R.C. 2151.353(A)(5)(c).

{¶ 25} When a trial court determines the best interest of a child, it is required by R.C. 2151.414(D) to consider all relevant factors, including:

{¶ 26} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

{¶ 27} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶ 28} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

{¶ 29} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶ 30} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶ 31} "An appellate court will not reverse a trial court's determination concerning parental rights and child custody unless the determination is not supported by sufficient evidence to meet the clear and convincing standard of proof." *In re Dylan C.* (1997), 121 Ohio App.3d 115, 121, 699 N.E.2d 107. "Clear and convincing evidence is that level of proof which would cause the trier of fact to develop a firm belief or conviction as to the facts sought to be proven." Id.

{¶ 32} The trial court's decision to place Stephan in a PPLA was based upon its finding that Stephan is not capable of living in a family-like setting and that it is therefore in his best interest to remain in long-term foster care. R.C. 2151.353(A)(5)(a). GCCS argues that this decision is against the weight of the evidence. In support, the agency argues that Stephan is currently living in a family-like setting with his foster family and is doing well.

{¶ 33} The issue of what constitutes a family-like setting for this purpose has been addressed by the Eighth District Court of Appeals. *In re Tanker* (2001), 142 Ohio App.3d 159, 754 N.E.2d 813. In *Tanker,* the children were residing with a foster family in a residential setting. The court rejected the agency's claim that this fact established that the children were capable of residing in a family-like setting. Id. at 165–166, 754 N.E.2d 813. The court stated:

{¶ 34} "[T]his argument misses the point—the foster parents are specifically trained to deal with the type of emotional and behavioral problems these children possess, so it cannot be said that the current foster home is akin to a true 'family-like' setting. Hence while it is certainly true that the foster parents have successfully established a 'family,' it does not follow that their success suggests that these troubled children could live in any 'home.' The court could rationally consider that these foster parents have established a family-like home for the

children precisely because they have special skills that potential adoptive parents might lack." Id.

{¶ 35} This court has adopted the reasoning of the Eighth District. See *In re Priser*, Montgomery App. No. 19861, 2004-Ohio-1315, 2004 WL 541124. *Priser* involved a child with "a variety of very serious and debilitating mental and psychological problems and special needs." Id. at ¶ 54. The child was living with a foster family that provided a "supportive, stable home environment," and the foster parents had "special training in dealing with the type of mental, emotional and behavioral problems with which [the child] is afflicted." Id.

{¶ 36} However, we noted that the fact that a child is residing in a home with a foster family is not dispositive of whether he is living in a family-like setting. Id. We specifically stated that the mere fact that the child was "thriving and making progress in the family-like setting established by his current foster parents" did not mandate a finding that he could "function in any ordinary family-like home where the potential adoptive parents might lack the special skills possessed by [his] current foster parents." Id.

{¶ 37} With these standards in mind, we turn to the issue of whether the trial court's findings and decision are supported by the evidence. The record contains evidence that Stephan has a profound disability with severe attendant health problems. It is clear from the testimony that his special needs would make it difficult to place him in an ordinary adoptive household. Indeed, the testimony presented by GCCS indicates that the agency, in searching for adoptive parents, would need to make inquiries regarding families that are specifically interested in children with Down syndrome. The witnesses for GCCS admitted that it will be difficult to place Stephan in an adoptive home and that any adoptive parents will need to be able to handle his special needs. The record indicates that Stephan must be placed with a family that has some sort of training or experience with his disability and health problems.

{¶ 38} Furthermore, it is clear from the record that the current foster mother has had some training from Stephan's doctors with regard to Stephan's care. For example, she has had occasion to administer shots to Stephan following surgery. Additionally, the foster mother has some training as a medical assistant. She has also worked in the rehabilitation section of a local hospital for five years, during which time she attended patients with brain injuries, including strokes. The foster mother has a certificate in special education and has experience in caring for children with special needs. In sum, there is credible evidence that the foster mother has specialized training that enables her to care appropriately for Stephan.

{¶ 39} Stephan has been in foster care for more than 12 months. The record indicates that the foster family has not made any decision with regard to whether

it will adopt Stephan, given that the foster father is deployed in the military. It further appears that the foster family is willing to continue as a long-term foster family for Stephan. Stephan is attached to his foster family, but still maintains a relationship with his natural mother.

{¶ 40} We conclude that there is clear and convincing evidence to support the trial court's determination that placing Stephan in a PPLA is in his best interest and that this determination does not constitute an abuse of discretion. Accordingly, the sole assignment of error is overruled.

## III

{¶ 41} The sole assignment of error having been overruled, the judgment of the trial court is affirmed.

Judgment affirmed.

GRADY and DONOVAN, JJ., concur.