[Cite as *In re S.C.*, 2013-Ohio-623.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

IN RE: S.C. 　　　　　　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　　　: 　　　C.A. CASE NO. 　24890

　　　　　　　　　　　　　　　　　　　　　　: 　　　T.C. NO. 　JC 2009-6312

　　　　　　　　　　　　　　　　　　　　　　: 　　　(Civil appeal from Common
　　　　　　　　　　　　　　　　　　　　　　　　　　Pleas Court, Juvenile Division)

　　　　　　　　　　　　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　　　:

　　　　　　　　　　　. . . . . . . . . .

**O P I N I O N**

Rendered on the 　　22nd　　 day of 　　　February　　　, 2013.

　　　　　　　　　　　. . . . . . . . . .

CARLEY J. INGRAM, Atty. Reg. No. 0020084, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
　　　　Attorney for Plaintiff-Appellee

SCOTT A. ASHELMAN, Atty. Reg. No. 0074325, 703 Liberty Tower, 120 W. Second Street, Dayton, Ohio 45402
　　　　Attorney for Defendant-Appellant

JAY CARTER, Atty. Reg. No. 0041295, 111 W. First Street, Suite 519, Dayton, Ohio 45402
　　　　Attorney for Minor Child

PHILLIP A. REID, Atty. Reg. No. 0016537, 10 W. Monument Avenue, Dayton, Ohio 45402
　　　　Guardian Ad Litem

[Cite as *In re S.C.*, 2013-Ohio-623.]

A.P., Dayton, Ohio
        Mother of S.C.

M.C., Dayton, Ohio
        Father of S.C.

. . . . . . . . . .

FROELICH, J.

{¶ 1} S.C.'s father ("Father") appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which ordered his daughter, S.C. (age 14), to be placed in a planned permanent living arrangement and overruled Father's motions for legal custody and to restore visitation. For the following reasons, the trial court's judgment will be affirmed.

I.

{¶ 2} In July 2009, Montgomery County Department of Job and Family Services, Children Services Division ("MCCS") filed a dependency complaint regarding S.C. in the juvenile court. After a dispositional hearing in October 2009, MCCS was given temporary custody of S.C. Both parents were permitted to have weekly visitation. Temporary custody to MCCS was extended in July and November 2010.

{¶ 3} On November 24, 2010, Father filed a motion for legal custody, arguing that S.C. was not thriving in her group home, that her mother was incapable of caring for her, that she had expressed a desire to live with her father, and that he was capable of providing proper care. The court did not immediately rule on this motion. In February 2011, MCCS moved to have Father's visitation suspended due to allegations by S.C. that her father had sexually abused her before MCCS's involvement, repeated inappropriate remarks by Father to S.C. during visitation, and the negative impact that father's visits were having on S.C.'s

behavior. S.C. had also had suicidal ideations. The trial court granted MCCS's motion to suspend visitation.

{¶ 4} In April 2011, MCCS filed a motion for a planned permanent living arrangement. The following month, Father moved to restore his visitation.

{¶ 5} A hearing on MCCS's motion for a planned permanent living arrangement and on Father's motions for legal custody and to restore visitation was held on September 20, 2011. The hearing was attended by S.C.'s caseworkers at MCCS and counsel for MCCS, S.C.'s mother (with counsel), Father (with counsel), counsel for S.C., and S.C.'s guardian ad litem. At the beginning of the hearing, Father's counsel told the court that Father "did make considerable effort to get [the parenting/psychological evaluation] done, because he could not get it done through the Agency paying for it. He had to try to get it done under his own insurance. And we were unable to find a place to provide that service with his coverage." Father acknowledged, however, that the evaluation had not been conducted, as required by his case plan with MCCS. Though recognizing that Father made "some attempt" to complete the parenting/psychological evaluation requirement, the trial court denied Father's motions for legal custody and to restore visitation due to his failure to meet that case plan objective.

{¶ 6} S.C.'s caseworker, Mallory Mitchell, testified regarding the motion for a planned permanent living arrangement. Mitchell stated that Father's sole objective under his case plan was to receive a parenting/psychological evaluation. That requirement had not been accomplished. Mitchell testified that S.C. had been living at Beachbrook Residential Facility in Cleveland for three months. She was sent to that facility due to numerous

suicidal attempts or ideations, which resulted in about eight hospitalizations in a three- to four-month period of time; S.C. was not getting better at her prior location. S.C. has been on suicide watch "considerably" during her time at Beachbrook. S.C. did not appear to understand the seriousness of her behavior. S.C. had previous issues with hygiene, which had improved at the group home in Dayton, but her hygiene deteriorated again at Beachbrook. Mitchell stated that MCCS originally believed that S.C. could be reunified with her mother, but "that has since turned based on [S.C.'s] severe mental health issues." S.C. was also displaying some onset signs of "some kind of psychosis maybe that there may be some schizophrenia setting in." Mitchell did not believe that S.C. could function in a family-like setting; he stated that a person trying to handle S.C.'s behavior would need extensive training and experience in dealing with children with such mental health behaviors. He knew of no suitable family placement. S.C. "had always voiced the opinion that she do not want to stay with her dad for various reasons." Mitchell recommended that S.C. be placed in a planned permanent living arrangement, which he believed was in S.C.'s best interest.

{¶ 7} S.C.'s mother and the guardian ad litem were in favor of MCCS's motion for a planned permanent living arrangement. The trial court orally granted MCCS's motion, over father's objection. On September 22, 2011, the trial court issued a written judgment, terminating temporary custody, ordering a planned permanent living arrangement, and denying Father's motions for legal custody and to restore visitation. The trial court specifically found that S.C. could not return home because she "continues to have substantial mental health issues for which she requires residential treatment" and that "it is in the best

interest of the child to be placed in a planned permanent living arrangement."

{¶ 8} Father appeals from the trial court's judgment.

II.

{¶ 9} Father's appellate counsel has filed a brief pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating that after thoroughly examining the record, he found no potentially meritorious issues for appeal. Counsel identified two possible assignments of error, namely that the trial court erred in ordering a planned permanent living arrangement for S.C. and that the trial court abused its discretion when it overruled father's motions for legal custody and to restore visitation.

{¶ 10} By entry, we informed Father that his appellate attorney had filed an *Anders* brief on his behalf and granted him sixty days from that date in order to file a pro se brief. To date, no pro se brief has been filed. Counsel for MCCS also has not provided a substantive response to Father's counsel's *Anders* brief. The case is now before us for our independent review of the record. *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988).

{¶ 11} "A planned permanent living arrangement, formerly called long-term foster care, 'is an alternative form of custody in which the child is placed in a foster home or institution, with the intention that the child will remain in that home or institution until he is no longer in the county child services system.'" *Miller v. Greene Cty. Children's Serv. Bd.*, 162 Ohio App.3d 416, 2005-Ohio-4035, 833 N.E.2d 805, ¶ 20 (2d Dist.), quoting *In re D.B.*, 8th Dist. Cuyahoga No. 81421, 2003-Ohio-3521, ¶ 6. Unlike an order granting permanent custody of a child to the children services agency, a planned permanent living arrangement

does not terminate parental rights. *Id.*; R.C. 2151.011(B)(39). However, a PPLA does give legal custody of the child to the agency and allows the agency to make an appropriate placement of the child. R.C. 2151.011(B)(39).

{¶ 12} R.C. 2151.353(A)(5) provides that the juvenile court may place an abused, dependent, or neglected child in a planned permanent living arrangement if (1) a public children services agency or private child placing agency requests the court to place the child in a planned permanent living arrangement, (2) the trial court finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child, and (3) one of three circumstances exist, including:

(a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care now and for the foreseeable future beyond the date of the dispositional hearing held pursuant to section 2151.35 of the Revised Code[.] * * *

{¶ 13} In determining the best interest of a child for purposes of R.C. 2151.353(A)(5), the juvenile court must consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the

child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶ 14} If an agency requests that the juvenile court place the child in a planned permanent living arrangement, the agency "shall present evidence to indicate why a planned permanent living arrangement is appropriate for the child, including, but not limited to, evidence that the agency has tried or considered all other possible dispositions for the child." R.C. 2151.415(C)(1).

{¶ 15} In this case, MCCS specifically requested that S.C. be placed in a planned permanent living arrangement. Mitchell's testimony established that S.C. had attempted suicide on numerous occasions and continued to have suicidal thoughts, and she had displayed some onset signs of some kind of psychosis, possibly schizophrenia. S.C. continued to be on suicide watch at Beachbrook. S.C. was again having serious issues with her hygiene – a matter that was an original concern and had improved at the group home, but

deteriorated again in recent months. S.C. did not appear to understand the seriousness of her behavior.

{¶ 16} MCCS's evidence provided strong support for the conclusion that S.C. was unable to function in a family-like setting due to her severe mental health issues, and that she needed supervision by someone with extensive experience in her mental health problems. MCCS knew of no suitable placements with family members. S.C. repeatedly expressed the opinion that she did not want to live with her father, and Father had not met his case plan objective. S.C.'s mother and guardian ad litem agreed with the planned permanent living arrangement, and MCCS's evidence strongly supported the trial court's conclusion that a planned permanent living arrangement was in S.C.'s best interest. We find no reasonable argument that the trial court erred in granting MCCS's motion for a planned permanent living arrangement for S.C.

{¶ 17} We also agree with appellate counsel that there is no arguable merit to a claim that the trial court erred in denying Father's motions for legal custody and to restore visitation. Father's right to visitation was previously suspended due to allegations of sexual misconduct with S.C. and her brother, and he did not complete his case plan requirement that he have a parenting evaluation conducted. Moreover, given the evidence in support of MCCS's motion for a planned permanent living arrangement, the trial court did not err in denying Father's motion for legal custody.

{¶ 18} We note that Father was represented by an attorney throughout these proceedings. A parent is entitled to representation by legal counsel at all stages of the proceedings under Chapter 2151, including the right to have counsel appointed if the parent

is indigent. R.C. 2151.352; Juv.R. 4(A). Father had ample opportunity to present his arguments to the trial court and to cross-examine Mitchell at the hearing.

{¶ 19} In summary, having conducted our independent review of the record, we find no arguably meritorious issues for review.

III.

{¶ 20} The trial court's judgment will be affirmed.

. . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies mailed to:

Carley J. Ingram
Scott A. Ashelman
Jay Carter
Phillip A. Reid
A.P.
M.C.
Hon. Nick Kuntz