OPINION
{¶ 1} Defendant-appellant David F. Travis appeals the decision of the Clark County Court of Common Pleas, Domestic Relations Division, which overruled his motion to be named residential parent of his son, J.T. David filed the motion on November 5, 2004.
 {¶ 2} Aside from requesting that he be named the residential parent of J.T., David also *Page 2 
asked the trial court to establish a permanent visitation schedule. Further, he requested that the court modify the amount of child support he was paying. A hearing on David's motion was held over five days on February 22, 2005, October 13, 2005, December 16, 2005, January 5, 2006, and February 22, 2006. On March 16, 2006, the trial court issued a written decision overruling David's motion. David filed a timely notice of appeal with this Court on April 14, 2006.
 I {¶ 3} David and plaintiff-appellant Stacie L. Travis were married on September 4, 1999, in Columbus, Ohio. One child, J.T., was born of their marriage on February 3, 2000. On April 25, 2001, Stacie filed a complaint for divorce.
 {¶ 4} The parties were granted a divorce on January 25, 2002. The divorce decree designated Stacie as the sole residential parent and legal custodian of J.T., and David was ordered to pay child support. David was granted visitation with J.T. consistent with the trial court's standard order of visitation.
 {¶ 5} At the time David's motion to be named residential parent was filed, Stacie resided with her two minor children, J.T. and N.S. N.S. is Stacie's younger daughter who was born from her relationship with her boyfriend, Jimmy Stewart. Although unemployed at the time the trial court issued its denial of David's motion, Stacie had worked as a cashier at a Speedway Gas Station until she was fired on August 25, 2005.
 {¶ 6} David resides with his new wife, Angela Travis, whom he married on June 8, 2002. The couple has a son who was born November 19, 2004. David is a self-employed independent contractor for Fed-Ex Ground. As of January 3, 2006, David had failed to maintain his child support obligation to Stacie and owed an arrearage of approximately $8,239.00. *Page 3 
 {¶ 7} The parties' minor child, J.T., is six years old with special needs. J.T. has been diagnosed with attention deficit hyperactivity disorder (ADHD), anxiety issues, and obsessive/compulsive disorder. J.T. has suffered significant difficulty in learning to be potty trained. According to one of J.T.'s pediatricians, the child will need to learn certain "coping skills" and "stress relievers" in order to help him deal with his behavioral issues as he matures. The record clearly indicates that both parents are genuinely concerned about J.T.'s problems, and both are dedicated to helping J.T. deal with his issues.
 {¶ 8} The report issued by the Guardian Ad Litem (GAL) recommended that Stacie remain the residential parent and legal custodian of J.T., but that David's visitation rights be expanded. In its written decision, the trial court found that Stacie has always been J.T.'s primary care giver and has done a relatively good job of raising him. The court also found that David's child support obligation was a significant factor which motivated him to request a change of custody. The trial court stated that based on the totality of the credible evidence, J.T. has a greater opportunity for positive future development if he were to continue to reside with his mother. Thus, the court overruled David's motion and held that Stacie was better suited to provide for J.T.'s daily needs and that David failed to sustain his burden of proof in establishing that a change in circumstances had occurred. The court additionally ordered that David be entitled to visitation with J.T. on alternate weekends as originally set forth in the parties' divorce decree. It is from this judgment that David now appeals.
 II {¶ 9} David's first assignment of error is as follows:
 {¶ 10} "THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO THE *Page 4 
PREJUDICE OF DAVID F. TRAVIS WHEN THAT COURT FOUND THAT HE HAD NOT PROVEN THAT THERE HADE BEEN A `CHANGE IN CIRCUMSTANCES (OF SUBSTANCE) CONCERNING THE PARTIES' MINOR CHILD OR CONCERNING MS. TRAVIS [STACIE] WHICH WOULD JUSTIFY A MODIFICATION OF THE COURT'S PRIOR ORDERS'"
 {¶ 11} In his first assignment, David contends that the trial court abused its discretion when it found that he had not met his burden to establish that a change in circumstance had occurred which required that the court modify its prior order and name him residential parent and legal custodian of J.T. David argues that the following factors clearly establish the need for him to be named the residential parent of J.T.:
 {¶ 12} 1) J.T.'s change in age from 11 months at the time of the divorce to six years old at the time of the custody hearing;
 {¶ 13} 2) the emergence of certain behavioral issues affecting J.T.'s mental health;
 {¶ 14} 3) Stacie's alleged denial of David's parenting time; and
 {¶ 15} 4) Stacie's alleged hostility towards Angela Travis, David's new wife.
 {¶ 16} Before addressing the substance of appellant's argument, we must articulate the appropriate standard of review. It is well-settled that the trial court's decision in disputes involving the custody of children is accorded deference upon review. The trial court's decision in a custody proceeding is subject to reversal only upon a showing of an abuse of discretion. Davis v. Flickinger (1997), 77 Ohio St.3d 415, 417,674 N.E.2d 1159, 1997-Ohio-260. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v.Blakemore (1983), *Page 5 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 17} Since the trial court's multiple day custody hearing was held pursuant to a request for a modification of the prior decree allocating the parental rights and responsibilities for J.T.'s care, our analysis begins with R.C. 3109.04(E)(1)(a) which states in pertinent part:
 {¶ 18} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on the facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, [or] the child's residential parent, * * * and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree * * * unless a modification is in the best interest of the child and one of the following applies:
 {¶ 19} "(i) The residential parent agrees to a change in the residential parent * * *
 {¶ 20} "(ii) The child, with the consent of the residential parent * * * has been integrated into the family of the person seeking to become the residential parent.
 {¶ 21} "(iii) The harm likely to be caused by a change in environment is outweighed by the advantages of the change of environment to the child."
 {¶ 22} In regards to the change of circumstance requirement, the Ohio Supreme Court has held:
 {¶ 23} "* * * R.C. § 3109.04 requires only a finding of a `change in circumstance' before a trial court can determine the best interest of the child in considering a change of custody. Clearly, there must be achange of circumstances to warrant a change of custody, and the change must be a change of substance, not a slight or inconsequential change." (Emphasis in original.) *Page 6 Davis, supra, (1996), 77 Ohio St.3d at 417-418, 674 N.E.2d 1159.
 {¶ 24} The Supreme Court in Davis also stated that "in determining whether a `change' has occurred, we are mindful that custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have a wide latitude in considering all the evidence before him or her * * *." Id. at 418, 674 N.E.2d 1159.
 {¶ 25} Initially, David notes that at the time of the parties' divorce, J.T. was only eleven (11) months old. J.T. has since reached the age of six (6) years old at the time David requested that he be named the residential parent. Essentially, David argues that J.T.'s advancement in age coupled with the onset of the child's ADHD, obsessive/compulsive disorder, and other anxiety issues is a clear change in circumstance that mandates a reallocation of parental rights and responsibilities. David also points out that J.T. has resisted potty training and soils himself numerous times a day. David argues that these behaviors indicate that J.T. "is a child who is in need of a great deal of help." While we certainly agree with David's assessment of his son's emotional status, we cannot find that this situation is sufficient to establish that a change in circumstance has occurred.
 {¶ 26} A child's maturing may constitute a change in circumstances, but age alone will not be sufficient. Basinger v. Basinger (April 30, 1999), Trumbull App. No. 98-T-0080. In regards to J.T.'s behavioral problems, the trial court found that the evidence suggests that both parties are genuinely concerned and Stacie has taken proper steps to assist J.T. in dealing with these issues. The record indicates that shortly after J.T. started kindergarten in the fall of 2005, he did not integrate well with other children in his age group because of his behavioral problems. Stacie testified that she went to the school almost on a daily basis to deal with J.T.'s *Page 7 
behavior. While it is true that Stacie has her share of personal difficulties such as an unsteady employment record and depression issues for which she is taking medication, the record indicates that she deeply cares for J.T. and is willing to make the sacrifices necessary for his positive growth.
 {¶ 27} The record indicates that David, on the other hand, is strongly motivated to become J.T.'s residential parent in order to avoid paying child support. As noted previously, David owed an arrearage of approximately $8,239.00 as of January 3, 2006. The trial court took issue with David's apparent refusal to pay child support and stated the following:
 {¶ 28} "It is clear * * * that money has been a motivating factor to Mr. Travis in bringing his action for change of custody, although, in all fairness, it is probably not the only factor. Regardless, Mr. Travis was well aware of the financial difficulties which Stacie Travis was experiencing while his son was living there all along and despite this fact, he failed to provide adequate support for his son, which, in this Court's eyes, speaks volumes."
 {¶ 29} Simply put, there is no evidence in the record which demonstrates that Stacie would be unable or unwilling to provide the necessary support for J.T. in regards to his emotional and educational needs. David has failed to demonstrate to this Court that the onset of J.T.'s behavioral issues represents a change in circumstance that would require a change in custody for J.T. In fact, the record establishes that David failed to pay Stacie child support when he was, at least, partially aware that she was struggling financially and emotionally while acting as the residential parent and legal custodian of J.T.
 {¶ 30} David also argues that Stacie has repeatedly denied him visitation with J.T., and this behavior on her part represents a change in circumstance which requires that custody of the *Page 8 
minor child be awarded to David. Further, David contends that Stacie has demonstrated hostility towards Angela Travis, David's new wife, and refuses to permit Angela to pick up J.T. for visitation purposes.
 {¶ 31} The Supreme Court in Davis, supra, stated the following:
 {¶ 32} "While a new marriage, alone, usually does not constitute a sufficient change in circumstances, a new marriage that creates hostility by the residential parent and spouse toward the nonresidential parent, frustrating attempts at visitation, may be an unforeseen change in circumstances warranting further inquiry into the best interest of the child."
 {¶ 33} In the instant case, the record indicates that Stacie had been allowing David visitation with J.T. every weekend between the date of the parties' divorce on January 25, 2002, and the date of the filing of David's motion for change of custody on November 5, 2004. After the filing of said motion, Stacie ceased allowing David visitation for a very brief period of time in late 2004. However, visitation resumed shortly thereafter, and J.T. was staying at his father's three weekends out of every month. Although David complains that Stacie unilaterally cut back his visitation with J.T. to only three weekends a month, the parties' divorce decree states that David is only to have custody of the child on alternating weekends every month.
 {¶ 34} While the trial court acknowledged that a child's visitation with his father is very important, the court found that Stacie was better equipped to deal with J.T.'s behavioral problems. It is apparent from the record that Stacie has a difficult relationship with Angela Travis. In fact, Stacie testified that since David filed the motion for change of custody, she stopped permitting Angela to pick up J.T. for weekend visitation. Stacie agreed that Angela spends a considerable amount of time with J.T. and seems to care for him. However, Stacie *Page 9 
stated that she felt that Angela "belittled" and "criticized" her for the way she conducted her life. Still, Stacie allowed David to have visitation with J.T provided that Angela be accompanied by Floyd Travis, David's father, when she came to pick up the child. While Stacie's behavior towards Angela could be criticized as immature and childish, it does not merit a change in circumstance requiring that Stacie be replaced by David as residential parent of J.T. The fact that Stacie ceased J.T.'s visitation with David for a short period of time is certainly troubling, but we are more troubled by David's failure to pay his court-ordered child support for J.T.'s maintenance and care.
 {¶ 35} Taken alone or collectively, the factors cited by David that he argues establish that a change in circumstance has occurred are insufficient to meet the standard enunciated in R.C. 3109.04(E)(1)(a) in regards to a trial court's modification of a prior custody decree. Thus, the trial court did not abuse its discretion when it held that no change in circumstance occurred which would require a modification of the court's prior order that Stacie is to remain J.T.'s residential parent and legal custodian.
 {¶ 36} David's first assignment of error is overruled.
 III {¶ 37} David's second assignment of error is as follows:
 {¶ 38} "THE TRIAL COURT ERRED WHEN IT REDUCED THE PARENTING TIME (VISITATION ENJOYED BETWEEN FATHER, DAVID F. TRAVIS, AND HIS SON, J.T.[)] WITHOUT DETERMINGN [sic] WHAT WAS IN THE CHILD'S BEST INTERESTS"
 {¶ 39} In his second assignment, David contends that the trial court erred when it reduced J.T.'s visitation time with him to only two weekends a month without first finding that *Page 10 
the modification was in the child's best interests. We disagree.
 {¶ 40} Initially, it must be reiterated that the parties' divorce decree stated that David was only entitled to two weekends of visitation per month. Prior to the trial court's ruling on David's motion for change of custody, he had visitation with J.T. for three weekends every month. In its written decision, the trial court held that the visitation schedule would revert back to just two weekends a month as enunciated by the divorce decree.
 {¶ 41} However, in light of our holding that no change in circumstance has occurred in regards to the care and supervision of J.T., we need not reach the issue of what is in his best interests. Absent a finding of a change of circumstances, there would be no reason for a trial court to consider testimony and evidence as to the best interest's of the minor child. Davis, 77 Ohio St.3d 415, 417, 674 N.E.2d 1159. R.C.3109.04(E)(1)(a) creates a rebuttable presumption that retaining the residential parent designated by prior decreee is in the child's best interest. Rohrbaugh v. Rohrbaugh (2000), 136 Ohio App.3d 599, 604,737 N.E.2d 551. Based on our conclusion with respect to David's first assignment of error, i.e., that the trial court did not abuse its discretion in finding no change in circumstances, David's second assignment must fail.
 {¶ 42} Although the trial court was not required to do so, it specifically held that "it is appropriate and in the minor child's best interest that Mr. Travis be entitled to the visitations originally set forth in the parties' Divorce Decree filed January 25, 2002[,] without any additional modifications." The trial court based its decision in this regard on the finding that Stacie was more experienced and better suited to deal with J.T.'s behavioral issues than David. The court also found that until J.T.'s life stabilizes, it would not be appropriate to expand David's visitation with the minor child. Thus, the trial court did not abuse its discretion when it *Page 11 
found that a reduction of David's actual visitation was appropriate.
 {¶ 43} David's second assignment is overruled.
 IV {¶ 44} David's third assignment of error is as follows:
 {¶ 45} "THE TRIAL COURT ERRED WHEN IT FAILED TO ADDRESS THE ISSUE OF THE AMOUNT OF CHILD SUPPORT PAID BY DAVID TRAVIS"
 {¶ 46} In his third assignment, David contends that the trial court erred when it failed to address the issue of the amount of child support he was ordered to pay. David points out that in his motion for change of custody, he requested that the trial court set child support. David argues that although a great deal of testimony was offered on child support during the hearing, the court failed to properly discuss the issue and set an amount in its written decision. We disagree.
 {¶ 47} With respect to David's child support obligation, the trial court stated the following in its written decision overruling his motion for change of custody:
 {¶ 48} "* * * In the original Divorce Decree filed January 25, 2002, Mr. Travis was obligated to pay $436.17 per month including [a] processing fee as and for his current child support obligation and with the adjustment review entry filed January 7, 2005, his obligation was increased to $741.05 per month for his current child support obligation plus an additional $148.21 to be paid towards his existing child support arrearage."
 {¶ 49} Although the trial court did not specifically mention David's child support obligation again, the court stated the following at the end of its opinion:
 {¶ 50} "* * * this Court finds that it is appropriate and in the minor child's best interest *Page 12 
that Mr. Travis be entitled to the visitations originally set forth in the parties' Divorce Decree filed January 25, 2002[,] without any additional modifications."
 {¶ 51} With respect to his child support obligation, David testified that he believed that he was being required to pay too much. He presented evidence at the hearing that Children's Services established his current child support order based on his gross income as a business owner and did not allow for the deduction of any business expenses. David asserts that the CSEA's failure to allow for the deduction of business expenses in formulating an individual's child support obligation is contrary to law and clearly not in the best interests of the child. David, however, provides us with no evidence to support this conclusion.
 {¶ 52} Moreover, David testified that his business grosses approximately $250,000.00 per year. Of that sum, David pays himself approximately $77,000.00 per year. Children's Services utilized the latter amount to determine David's current child support obligation of $741.05 per month plus an additional $148.21 to be paid towards his existing child support arrearage.
 {¶ 53} After a thorough review of the record, we must conclude that David's child support obligation was properly calculated. Further, the trial court did specifically address David's child support obligation in its written decision. Had the court found a basis to modify the amount, it could have readily done so. Instead, the trial court chose only to modify David's visitation schedule with J.T. The court clearly found no basis to modify the amount of child support David was ordered to pay. Based on the trial court's repeated condemnations of David for failing to pay any child support to Stacie, we must conclude that the court chose not to modify the amount of child support ordered. The fact that the court did not make any new order *Page 13 
regarding child support simply illustrates that the court intended that the existing order stay in place until such time that David can successfully sustain his burden to demonstrate that a change in circumstance has occurred warranting a modification of his child support obligation.
 {¶ 54} David's third assignment of error is overruled.
 V {¶ 55} David's fourth and final assignment of error is as follows:
 {¶ 56} "THE TRIAL COURT DENIED DAVID F. TRAVIS DUE PROCESS WHEN IT TOOK SIXTEEN AND ONE-HALF MONTHS TO HEAR AND DECIDE THIS CASE."
 {¶ 57} In his final assignment of error, David contends that the trial court violated his right to due process when it took over sixteen months to hear and issue a decision on his motion for a change in custody. While the hearings seem to have taken an inordinate amount of time, David has failed to demonstrate the opinion issued by the court is erroneous or would be any different if this matter were remanded for a new hearing, which would only cause further delay. Further, there was no objection from David or his counsel at any point during the sixteen and one-half months over which these hearings were conducted.
 {¶ 58} Another option would have been to file a petition for a writ of procedendo with this Court or with the Supreme Court of Ohio. Said writ "is appropriate when a court has either refused to render judgment or has unnecessarily delayed proceeding to judgment." State ex rel. Mileyv. Parrott (1996), 77 Ohio St.3d 64, 65, 671 N.E.2d 24, 26. "[A]n inferior court's refusal or failure to timely dispose of a pending action is the ill a writ of procedendo is designed to remedy." State exrel. Dehler v. Sutula (1995), 74 Ohio St.3d 33 35, 656 N.E.2d 332, 333. Since David neither objected to the time delay nor did he file a writ of procedendo, he is *Page 14 
effectively estopped from complaining on appeal that his due process rights were violated by the trial court's alleged inaction. We should note, however, that once the hearings were concluded, the court rendered a prompt written decision.
 {¶ 59} David's final assignment of error is overruled.
 VI {¶ 60} All of David's assignments of error having been overruled, the judgment of the trial court is affirmed.
 WOLFF, P.J. and GRADY, J., concur. *Page 1