OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Talisa Bell, nka Beard ("Beard"), filed February 2, 2007. Also before us is the Motion to Strike from Brief filed by *Page 2 
Appellee Everett E. Bell.
 {¶ 2} The parties were married on June 30, 1990, in Chicago, Illinois, and the marriage produced two children, T.B., born November 25, 1990, and D.B., born November 5, 1992. On September 23, 1994, Bell filed a Complaint for Divorce. On November 1, 1994, Beard was granted temporary custody of the children. On March 27, 1995, Bell filed a Motion for Change of Custody, and on April 27, 1995, he filed a Motion for Modification of Custody, seeking permanent custody of the children. On May 3, 1995, the court issued a Judgment Entry and Decree of Divorce. Beard was designated legal custodian and residential parent subject to Bell's visitation rights. Beard lived in Calumet City, Illinois at the time.
 {¶ 3} On September 12, 1995, the court issued a Journal Entry adopting the Magistrate's Decision, issued after a hearing, designating Bell as the legal custodian and residential parent of the parties' children. The court determined that Bell proved a change of circumstances. The court further determined that Bell had not seen his children since November, 1994, and that Beard was in contempt "due to her interference with visitation and failure to share information as to the children's whereabouts, which effectively secreted them from" Bell. Bell was a resident of Springfield, Ohio. The court determined that Beard was not entitled to visitation.
 {¶ 4} Beard filed Obj ections to the Magistrate's Report, a Motion to Stay Execution of Magistrate's Report and a Notice of Appeal. On March 4, 1996, Beard filed a Motion to Vacate the court's Journal Entry adopting the Magistrate's Decision.
 {¶ 5} On June 12, 1996, an Agreed Entry was issued, restoring Beard's visitation rights. On July 30, 1996, Beard filed a motion for change of custody. Bell filed a Motion to *Page 3 
Dismiss Beard's motion regarding custody.
 {¶ 6} On January 8, 1997, the trial court issued a Journal Entry adopting the Magistrate's decision, issued after a hearing, overruling Beard's motion for a change of custody, and Beard filed an Objection to the Magistrate's Decision.
 {¶ 7} On August 7, 1997, we dismissed Beard's appeal, determining that she did not timely file a brief nor a motion for an extension of time to do so.
 {¶ 8} On August 26, 1997, the court affirmed its order of January 8, 1997, that adopted the Magistrate's Decision. On September 24, 1997, Beard filed a Notice of Appeal. On June 5, 1998, we affirmed the judgment of the domestic relations court.
 {¶ 9} On September 30, 1998, Beard again filed a motion for change of custody which she voluntarily dismissed at the time of the final evidentiary hearing thereon.
 {¶ 10} On March 3, 2000, Beard filed a motion for "an order modifying this Court's former orders relating to custody, visitation,* * * ." Bell filed a Motion to Dismiss. On September 19, 2000, the domestic relations court overruled Beard's motion.
 {¶ 11} On June 14, 2002, Beard again filed a motion for change of custody. Testimony was taken and the court conducted two in camera interviews with the children. On April 8, 2003, the court, after thorough analysis, issued an Entry overruling Beard's motion.
 {¶ 12} On November 7, 2005, Beard filed another motion for change of custody. On January 5, 2007, after in camera interviews with the children and an evidentiary hearing, the court overruled Beard's motion, and it is from this judgment that Beard now appeals.
 {¶ 13} By way of background, Bell works as a detective for the Springfield Police Department in Springfield, Ohio. He is married to Yolanda Bell, and she works as an assistant *Page 4 
physical therapist and an assistant insurance broker. They have two children of their own, and Yolanda's nephew also lives with them. Beard works as an office manager at a real estate company in Illinois. She is married to Harold Beard, and she adopted a daughter prior to her marriage to Beard. Harold works for VFT Trucking Company, and he owns his own business, HBJ Transportation. Harold has three children of his own, none of whom reside with him.
 I. {¶ 14} We will first address Bell's Motion to Strike from Brief. Attached to Beard's brief are three articles on parenting, and Beard's brief asserts: "Mr. Bell's method of parenting is best described as `authoritarian,' which involves a high demand for strict compliance without explanation, but offers no responsiveness to the children.See, `Parenting Style and Its Correlates', Nancy Darling, Ph.D., M.S. (Attached as Exhibit #3); and see, `The Role of Family, Community, and Culture in Adolescent Development', Jason Schall, (attached as Exhibit #4). As the articles indicate, authoritarian parents tend to be unresponsive to the needs of their children and do not show love and affection. These articles corroborate the testimony of the two children and the Appellee as to the parenting style of Mr. Bell and its impact on the children, leaving them starved for love and subject to rigid rules for unexplained reasons.
 {¶ 15} "Talisa Beard's style of parenting, as explained by the children, by Talisa herself, and by Harold Beard, is best described as `authoritative'. As described in the referenced articles, authoritative parents set rules, but are also responsive to their children. Children of authoritative parents are not deprived of expression of love and are more comfortable in a give and take relationship with their parents. Darling, supra, Schall, supra.
 a. * * *Page 5 
 {¶ 16} "As the record reflects, these children are not rejecting their father. They simply want to live with their mother and to share in the environment and love and care which she provides. See, also, `Access and the Adolescent — Issues on Both Sides of the Fence', Gary Direnfeld, MSW, RSW. * * * The Appellant submits that the preferences of the children should be respected, and the reallocation of parental rights should be granted."
 {¶ 17} Bell argues in his motion that "only those items in the record may be presented before an appellate court unless of course those items are supporting authority. Appellant would have this court believe that the attached exhibits are secondary authority as referred to in the Brief. However, in law, secondary authority is material purporting to explain the meaning or applicability of the actual verbatim texts of constitutions, statutes, case law, administrative regulations, executive orders, treaties, or similar primary authority sources." Bell asks us to strike the exhibits because "they cannot be used as a basis for the decision in this matter." Bell relies upon State v. Ishmail (1978),54 Ohio St.2d 402, 377 N.E.2d 500 ("Since a reviewing court can only reverse the judgment of a trial court if it finds error in the proceedings of such court, it follows that a reviewing court should be limited to what transpired in the trial court as reflected by the record made of the proceedings.") Ishmail involved a transcript of a plea proceeding that was not before the trial court when it denied petitions for post-conviction relief, but which the appellate court added to the record and relied upon in setting aside the guilty pleas.
 {¶ 18} Beard argues that the exhibits are "persuasive authority" for our consideration, "just as a Law Review or other journal article might be considered." According to Beard, "a `Brandeis brief is neither novel nor prohibited by law." Beard relies in part on Muller v. *Page 6 Oregon (1908), 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551, in which the U.S. Supreme Court, in determining the constitutionality of a statute limiting the number of hours a woman may work in a laundry, considered "the course of legislation, as well as expressions of opinion from other than judicial sources," such as "reports of committees, bureaus of statistics, commissioners of hygiene, inspectors of factories," as represented in "a very copious collection" attached to defendant's brief. Beard argues that the "right of the Court to consider scientific studies, treatises and other secondary authority is well established by law," and that the attached exhibits should not be stricken.
 {¶ 19} The three articles Beard cites represent their authors' views of the impact of certain parenting styles on adolescent development. We initially note, as analyzed in detail below, that while Beard argues that the articles corroborate the children's testimony and Beard's regarding Bell's "authoritarian" parenting style, the trial court determined that the "credible evidence * * * suggests that [the] children still lack the maturity necessary to understand exactly why there are rules and discipline in their father's household," and also that Beard's testimony was not credible. Further, the articles are not scientific studies, treatises or other appropriate secondary authority such as a law dictionary or Ohio Jurisprudence. In other words, the articles do not interpret the primary authority pursuant to which the trial court declined to reallocate parental rights, namely R.C. 3109.04. Accordingly, we sustain Bell's Motion to Strike.
 II. {¶ 20} In her brief, Beard asserts five assignments of error. We will consider the first, second and fifth assignments of error together. They are as follows: "THE TRIAL COURT ERRED IN FINDING NO CHANGES OF CIRCUMSTANCES OF *Page 7 
SUBSTANCE."
And,
"THE TRIAL COURT ERRED IN GIVING LITTLE WEIGHT TO THE PREFERENCE OF THE CHILDREN."
And,
"THE TRIAL COURT'S DECISION DENYING REALLOCATION OF PARENTAL RIGHTS IS CONTRARY TO THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 {¶ 21} "`The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.' A reviewing court will not overturn a custody determination unless the trial court has acted in a manner that is arbitrary, unreasonable, or capricious." Haynes v. Haynes (Nov. 13, 1998), Montgomery App. No. 16992.
 {¶ 22} Our analysis begins with R.C. 3109.04(E)(1)(a) which provides: "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on the facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, [or] the child's residential parent, * * * and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree * * * unless a modification is in the best interest of the child and one of the following applies: *Page 8 
 {¶ 23} "(i) The residential parent agrees to a change in the residential parent * * *
 {¶ 24} "(ii) The child, with the consent of the residential parent * * * has been integrated into the family of the person seeking to become the residential parent.
 {¶ 25} "(iii) The harm likely to be caused by a change in environment is outweighed by the advantages of the change of environment to the child."
 {¶ 26} Regarding the change of circumstances requirement, "`* * * R.C. § 3109.04 requires only a finding of a "change in circumstance" before a trial court can determine the best interest of the child in considering a change of custody. Clearly, there must be a change ofcircumstances to warrant a change of custody, and the change must be a change of substance, not a slight or inconsequential change.'"Travis v. Travis, Clark App. No. 2006 CA 39, 2007-Ohio-4077, quotingDavis v. Flickinger (1997), 77 Ohio St.3d 415, 417, 674 N.E.2d 1159,1997-Ohio-260 (emphasis in original).
 {¶ 27} "The Supreme Court in Davis also stated that `in determining whether a "change" has occurred, we are mindful that custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have a wide latitude in considering all the evidence before him or her * * * .'" Id.
 {¶ 28} "The requirement that a parent seeking modification of a prior decree allocating parental rights and responsibilities must show a change of circumstances is purposeful: "`The clear intent of [R.C.3109.04(E)(1)(a)] is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the child a `better' environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of *Page 9 
custody may be able to prove that he or she can provide a better environment.'" Fisher v. Hasenjager, Slip Opinion No. 2007-Ohio-5589
(quoting Davis).
 {¶ 29} Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. FoleyConstruction (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 30} "`An appellate court will not reverse a trial court's determination concerning parental rights and custody unless the determination is not supported by sufficient evidence to meet the clear and convincing standard of proof `Clear and convincing evidence is that level of proof which would cause the trier of fact to develop a firm belief or conviction as to the facts sought to be proven.'" Miller v.Greene County Children's Services Board, (2005), 162 Ohio App. 3d 416,833 N.E.2d 805, 2005-Ohio-4035.
 {¶ 31} Beard initially argues that the trial court "incorrectly used April 8, 2003, the date of its last entry overruling appellant's prior motion for reallocation of parental rights, as the date from which to examine whether there has been a change of circumstances." According to Beard, "the relevant time frame for determining whether there has been a change of circumstances commenced on September 12, 1995, and not on April 8, 2003."
 {¶ 32} The trial court's Entry provides, "this court has not been provided with sufficient evidence by Ms. Beard that there has been a `change substance' in the circumstances of the minor children herein or of Mr. Bell which would justify modification of this Court's prior Orders filed April 8, 2003."
 {¶ 33} We agree with Beard. A "change of circumstances must be shown `based on facts that have arisen since the prior decree or that were unknown to the court at the time of the *Page 10 
prior decree.' R.C. 3109.04(E)(1)(a). `The statute's reference to "the prior decree" means the prior decree that allocated parental rights.' (Internal citation omitted). Therefore, the relevant time frame for determining whether a change in circumstances exists is not the period between a non-custodial parent's prior unsuccessful motion for a change of custody and the filing of a new motion. This is so because an unsuccessful motion for a change of custody does not result in a decree that allocates parental rights. * * * As a result, when a non-custodial parent files a second or successive motion for a change of custody after previously having failed on a similar motion, the starting point for determining whether a change in circumstances exists remains the date of the decree that actually allocated parental rights." In re: Custody ofM.B., Champaign App. No. 2006-CA-6, 2006-Ohio-3756 (remanding matter, where, upon father's motion for change of custody, the trial court limited its change of circumstances analysis to the period commenced by the father's 2002 unsuccessful motion for change of custody, and not the period commenced by the trial court's 1991 allocation of parental rights).
 {¶ 34} The court's error in confining the period of time relevant to the change of circumstances prong of the test in R.C. 3109.04(E) is nevertheless harmless, for two reasons. First, the circumstances on which Beard relied to prove the required change took place, in the main, within the period of time the court considered. Second, and more importantly, the court's findings relate to the "best interest" prong of the modification requirement in R.C. 3109.04(E)(1), and those findings were that a modification would not be in the best interests of the two minor children.
 {¶ 35} Beard next argues that there has been a "change of substance" in that the children "have aged from toddlers to adolescents since the prior decree. Each has expressed a strong *Page 11 
desire to reside with their mother, and, * * * each has articulated significant reasons in support of their preference." According to Beard, the trial court erred in "failing to consider the full depth of change over the approximately twelve years since the prior decree."
 {¶ 36} In determining that "there has not been a change of circumstance, of substance," the trial court noted, it "has conducted numerous in camera interviews with each of the parties' minor children and at no time in the past has this Court found that either of the children demonstrate sufficient reasoning ability to permit them the expression of their wishes and concerns in this case. The children are now three years older than they were at the time of the last hearing which took place in this matter on March 25, 2003. T. is now 16 years of age and D. is 14 years of age. For the first time ever, each of the children provided testimony at the hearing herein, as they were called to testify by Ms. Beard. a. * *
 {¶ 37} "In its Decision filed April 8, 2003, this Court found, based upon the evidence before it at that time, that D. had an IQ of approximately 82 (with 90 being average) and T. had an IQ of 80, all of which provides teachers, administrators and the parties' hereto a predictive grade equivalent to determine if the children are working at, above or below their ability level in school. The totality of the credible evidence suggests that both of the children herein are working at or above their ability levels * * * .
 {¶ 38} "During their testimony at the hearing herein, most of the children's complaints about their father or step-mother involved the fact that there are rules and consequences in their household that the children disagree with. The credible evidence in this case suggests that both of these children still lack the maturity necessary to understand exactly why there are rules and *Page 12 
discipline in their father's household.
a. * *
 {¶ 39} "The children's testimony at the hearing was not at all credible and, in fact, this Court finds that both children not only lacked maturity but they also lacked credibility while providing their testimony at the hearing herein, all in an apparent effort to convince this Court to let them live with their mother which, without question, is not in their best interest.
 {¶ 40} "Even at this point in their lives, these children still lack sufficient reasoning ability and, * * * it is not in their best interest for this Court to allot much weight to the children's wishes and concerns with respect to the issue of custody."
 {¶ 41} As for Beard, the court noted, "Most of Ms. Beard's answers to questions about significant issues in this case were either evasive or not believable and the same holds true for the testimony provided by Harold Beard. Ms. Beard's lack of credibility has been an issue in her many prior appearances before this Court. In fact, it is this Court's opinion that Ms. Beard is still more interested in `winning at all costs' than she is in assisting her children to deal with their problems." Indeed, the record reveals that Beard called the children to testify over Bell's opposition, and the trial court noted that the "process was clearly stressful to both children."
 {¶ 42} As in In re: Custody of M.B., the "issue [herein] is whether [the children's] maturation over the past [12] years, combined with [their] expressed desire to live with [Beard] and any other circumstances in this case, constitute a change in circumstances sufficient to warrant inquiry into the other requirements of R.C. 3109.04(E)(1)(a)." While we, unlike the trial court, did not have the opportunity to observe the witnesses and the parties, and to assess their credibility, having reviewed the entire record, it is abundantly clear that the children lack *Page 13 
the necessary maturity and reasoning ability to understand what is in their best interest; the trial court correctly declined to allot much weight to the children's express desires to live with Beard.
 {¶ 43} A review of T.'s testimony illuminates her lack of judgment. For example, T. testified that she knew that neither of her parents would allow her to pierce her belly button, that she did so behind their backs, and that, after her father made her remove the ring, she again, behind his back, replaced it. According to T., she "just got it taken away last Saturday because I snuck it." T. also testified that she had recently gotten into trouble with her father because she took a picture of her breasts with her cell phone and showed the picture to her cousin, J. T. testified about going to a friend's house one day after school, deliberately without telling Bell or his wife where she was. Bell did not know where T. was until nighttime, and he contacted the police. T. told Bell that, on one visit with Beard in Springfield, during which Beard stayed in a hotel, Beard allowed a boy named Da. to visit T. there. When asked, at the hearing, about seeing Da. at the hotel, T. stated that Da. did not visit her at the hotel. When asked why she told Bell that Da. was there, T. responded, "Because I was mad, but, I didn't, but he didn't go to the hotel. He was never even there. He said that he had it on video camera that he was supposedly been there but he wasn't." T. also testified that she got a "whooping" from Beard when Beard found T. driving Beard's car back and forth in Beard's driveway. Beard testified that T. has told her repeatedly that T. wants to have a baby.
 {¶ 44} D.'s testimony also reveals that he lacks the judgment to discern what is in his best interest in terms of custody; the clothing that D. receives from his mother seemed to be of primary import to him at the hearing. He wore a pair of pants to the hearing with a skull on the back, that Beard purchased. The following exchange occurred: *Page 14 
 {¶ 45} "Q. Do you tell [Beard] the good things that happen at [Bell's] house?
 {¶ 46} "A. Like what good things?
 {¶ 47} "Q. Do any good things happen at [Bell's] house?
 {¶ 48} "A. Lately, no. Mainly, no.
 {¶ 49} "Q. No. So, are you always unhappy and crying at your house?
 {¶ 50} "A. No. a. * *
 {¶ 51} "Q. No. Are you allowed to have friends at your house?
 {¶ 52} "A. Yes.
 {¶ 53} "Q. Are you allowed to go to school functions and movies and places with your friends?
 {¶ 54} "A. Yes.
 {¶ 55} "Q. And you are fed three meals a day, is that right?
 {¶ 56} "A. Three meals a day, yes. a. * *
 {¶ 57} "Q. And does your father ever purchase you any, you know, games, books, anything other than clothing or food?
 {¶ 58} "A. Yes.
 {¶ 59} "Q. Okay. Do you basically get it if it's within * * * what your dad feels within reason, everything that you need from your dad and Yolanda?
 {¶ 60} "A. Need, wanting some new clothes and all that, no.
 {¶ 61} "Q. You don't get everything that you want, but you get everything that you *Page 15 
need?
 {¶ 62} "A. Everything I need is new clothes and all of that."
 {¶ 63} Later, D. testified as follows:
 {¶ 64} "Q. And so, * * * Yolanda * * * is your stepmother but she's been acting on a day-to-day basis as the mother figure for you, when you are not with your own mom?
 {¶ 65} "A. No.
a. * *
 {¶ 66} "Q. She doesn't cook for you?
 {¶ 67} "A. Yeah, she cooks, yes.
 {¶ 68} "Q. Does she work and provide a home and a bed and blankets and toothpaste and tooth brushes and stuff?
 {¶ 69} "A. Yes.
 {¶ 70} "Q. Is there anything that you don't have at home that you really need?
 {¶ 71} "A. Better clothes and shoes and all of that."
 {¶ 72} Other circumstances in the case further confirm the trial court's rationale in overruling Beard's motion. Even without observing Beard, the record makes clear that she is wholly lacking in credibility. For example, on direct examination, Beard testified that she and Harold had never been separated, that Harold had never been violent, that she had never had to call the police about Harold, and that neither of them had ever filed for divorce. On cross examination, however, Beard was asked specific questions about several incidents at her home. Beard's, as well as Harold's, testimony revealed that the couple in fact had separated, that Harold was arrested for damaging Beard's property, and that Harold also at one point filed for *Page 16 
divorce from Beard.
 {¶ 73} Beard stated that she has a collection of books at her home and that T., then 15, selected one of the books, entitled "Player Haters," by Carl Weber, to read during a visit. According to Beard, "when I read the cover, I didn't see anything that was wrong with her reading the book." Beard was then asked to read a passage of graphic sexual text aloud from the book, thereby establishing that the book was inappropriate for T. Beard testified that she has spoken to T. about sex, but not about birth control or abstinence, even though T. has stated that she wants to have a baby.
 {¶ 74} We agree with the trial court that Beard did not meet her burden to show a change of circumstances; the trial court noted that at no time during its numerous in camera interviews with the children over the years did they demonstrate sufficient reasoning ability, and the court again rightly so concluded. Having thoroughly reviewed the entire record, and there being no change of circumstances of substance, we conclude that the trial court's decision is supported by sufficient evidence and is not against the manifest weight of the evidence. There being no abuse of discretion, Beard's first, second and fifth assignments of error are overruled.
 {¶ 75} Beard's third assignment of error is as follows: "THE COURT ERRED IN FINDING THAT APPELLANT PURCHASES ITEMS TO GAIN FAVOR WITH THE CHILDREN AND PROMISES THEM A LIFE FREE OF CONSEQUENCES."
 {¶ 76} The trial court noted, "The credible evidence suggests that Ms. Beard freely purchases items for the children in order to gain favor with them and promises them a life which is essentially free of consequences." *Page 17 
 {¶ 77} Bell argues, "there is nothing in the entry suggesting that this finding plays a major role in its decision, as is made evident by the language of the entry and the litany of other factors the court uses to find that the best interests of the children would be served by the father maintaining custody." We agree. Given our resolution of the above three assignments of error, namely that Beard did not meet her burden to show that maturation on the part of the children, coupled with their express desire to live with their mother, produced a change of circumstances of substance warranting a modification of custody, we need not address the merits of this assignment of error. Beard's third assignment of error is overruled.
 {¶ 78} Beard's fourth assignment of error is as follows: "THE TRIAL COURT'S FINDING THAT MR. BELL IS MORE LIKELY TO FACILITATE VISITATION THAN MRS. BEARD IS UNSUPPORTED BY COMPETENT, CREDIBLE EVIDENCE."
 {¶ 79} In determining the best interest of a child pursuant to R.C.3109.04, the court must consider all relevant factors, including the "parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights." R.C.3109.04(F)(1)(f). The trial court determined, "from the credible evidence, that Mr. Bell is more likely to honor and facilitate Court approved parenting time rights or visitations and companionship rights for Ms. Beard than she would in reverse." The trial court did not provide a rationale for this finding, but as mentioned above, the trial court suspended Beard's visitation rights in September, 1995, finding Beard in contempt "for interfering with visitation" and noting that Bell had not had physical visitation with the children in nearly a year. Further, Beard's pattern of deceit with the court provides a legitimate basis to question her potential compliance with *Page 18 
visitation orders.
 {¶ 80} As with the third assignment of error, we need not reach the merits of this assignment of error, since Beard failed to establish a change of circumstances. Beard's fourth assignment of error is overruled. Judgment affirmed.
 BROGAN, J. and GRADY, J., concur. *Page 1