OPINION
{¶ 1} Alison Chelman appeals from a decision granting John Chelman's motion for reallocation of parental rights and responsibilities pursuant to R.C. 3109.04(E)(1)(a) and awarding *Page 2 
awarding residential custody of their two minor children to John.[1]
Since the trial court made the required findings pursuant to R.C. 3109.04(E)(1)(a) and those findings are supported by sufficient evidence, there was no abuse of discretion and the trial court's decision is affirmed.
 {¶ 2} John and Alison Chelman were divorced on February 2, 2005. They have two children together, an eleven-year-old son and a nine-year-old daughter. At the time of the divorce Alison was awarded custody of the children, with John receiving a Standard Parenting Order, modified only to accommodate his work schedule as a fireman. John married his current wife Shelly shortly after his divorce.
 {¶ 3} Prior to John's remarriage, Alison began to exhibit her dislike for Shelly by telling the children they did not have to listen to Shelly or obey her rules. The relationship amongst the parties continued to worsen following John and Shelly's marriage.
 {¶ 4} On September 13, 2005 a Motion to Show Cause was filed by John based on Alison's failure to provide the children to John during his Spring Break parenting time, interference with mid-week parenting time, failure to provide adequate clothing during his parenting time, failure to provide documents regarding events for the children's activities, and failure to provide travel information and phone numbers when the children leave the state. The Motion to Show Cause was resolved by an Agreed Entry on March 21, 2006. The Agreed Entry modified the parenting schedules and procedures to include provisions for counseling, sharing of *Page 3 
of information, transportation and inclusion of John on school forms and authorizations. However, before signing the Agreed Entry Alison crossed out Shelly's name as an individual who could provide transportation for the children. A motion to add Shelly as an authorized person to transport the children was denied due to the "ongoing hostility" between the parties.
 {¶ 5} Another Motion to Show Cause was filed in the interim, asserting that Alison had violated the Agreed Entry by not permitting John parenting time, not providing adequate clothing for the children during John's parenting time, and failing to provide John with schedules of the children's activities. John also sought a restraining order preventing Alison from approaching him and an order for curbside pick-up/drop-off of the children and/or exchange at a local police department.
 {¶ 6} On May 30, 2006 an incident occurred during John's weekend parenting time with the children. His daughter had large blisters on her hands from a prior gymnastics practice and did not wish to go to gymnastics that morning. When she did not show up for gymnastics, Alison became upset and drove to John and Shelly's home. John was not at home, so Shelly answered the door. Alison insisted that her daughter go to gymnastics despite the blisters. Shelly explained that the child did not wish to go to practice because of the blisters and John had decided she could stay home. Alison became enraged and refused to leave, prompting Shelly to call the police. When the police arrived, Alison was still in the driveway yelling at Shelly and insisting that her daughter attend gymnastics.
 {¶ 7} On July 20, 2006 an incident occurred when John was not available to transport his daughter to her scheduled gymnastics practice. Alison made more than fifty calls over the course of an hour and a half to John's home and cell phone when their daughter did not show up to practice. *Page 4 
to practice. The tenor of these calls became more enraged and threatening when Alison actually saw Shelly with the children in her car. Alison followed Shelly and the children, pulling up alongside them and yelling out the window, prompting Shelly to drive with the children to the nearby police station for safety. Alison was subsequently charged with telephone harassment and aggravated menacing as a result of this incident and ultimately entered into a plea agreement in which she pled guilty to the telephone harassment charge.
 {¶ 8} A few days after this incident, Alison made the decision to move with the children to Bloomington, Illinois. She did not discuss this move with John and John learned of it from his daughter's gymnastics instructor. This prompted John to file a Motion for Reallocation of Parental Rights and Responsibilities and to seek an order preventing Alison from moving. At the request of John, a guardian ad litem was appointed for the children and a psychologist, Dr. Michael Williams, was appointed to perform a custody evaluation.
 {¶ 9} On September 25, 2006 Dr. Williams scheduled John, Shelly and the children for family-focused parent/child interaction observations. Alison initially indicated she would take the children to the meeting with Dr. Williams. However, when John indicated his willingness to pick the children up, she notified John he would need to reschedule the meeting due to their daughter's gymnastics practice. John sought and obtained a court order which directed Alison to have the children available to be picked up by John for the meeting, providing that John would drop their daughter off at her gymnastics practice following their meeting with Dr. Williams. However, Alison ignored the court order and took the children to Dr. Williams' office herself. She waited in the waiting room for the entire meeting and when the meeting went longer than anticipated, she "loudly and rudely" shook the glass door separating the waiting room from the inner office. *Page 5 
inner office. Patients in the waiting room also reported that Alison was talking loudly and angrily on her cell phone, calling Shelly a "whore" and using other expletives without consideration of the other patients.
 {¶ 10} Despite Alison's behavior, Dr. Williams stated in his report that neither home was clearly superior to the other. However, the GAL reached a different conclusion in her report, recommending that John be granted custody based on her perception that Alison would like to eliminate John's presence in the children's lives as much as possible. She premised this recommendation upon several factors, including Alison's statements that if the move did take place, John's extended summer parenting time would interfere with their daughter's gymnastics, Alison's inability to think of any of John's strengths as a parent, the fact that Alison listed John on their daughter's school enrollment form as "sperm donor" rather than father, Alison's persistence in speaking negatively about John and Shelly in front of the children, and Alison's inability to foster a positive relationship between the parties, stating that at her home they "did not discuss Daddy" and "Daddy is too busy to come over."
 {¶ 11} A hearing was held on the Motion for Reallocation of Parental Rights and Responsibilities on April 23, 2007 and June 7, 2007 before a visiting judge. The parties presented evidence and testimony and submitted written closing arguments. On August 31, 2007 the judge issued an order granting the Motion for Reallocation of Parenting Rights and Responsibilities and awarding John residential custody of the children. Alison filed a timely notice of appeal on September 20, 2007.
 {¶ 12} Alison Chelman sets forth three assignments of error:
 {¶ 13} "THE TRIAL COURT ERRED IN DETERMINING THAT THERE WAS A *Page 6 
CHANGE IN CIRCUMSTANCES SUFFICIENT TO WARRANT A MODIFICATION OF THE ORIGINAL ALLOCATION OF PARENTING RIGHTS."
 {¶ 14} "THE TRIAL COURT ERRED IN DETERMINING THAT THE MODIFICATION OF THE ORIGINAL ALLOCATION OF PARENTAL RIGHTS WAS IN THE CHILDREN'S BEST INTERESTS."
 {¶ 15} "THE TRIAL COURT ERRED IN DETERMINING THAT THE HARM LIKELY TO BE CAUSED BY A MODIFICATION OF THE ORIGINAL ALLOCATION OF PARENTAL RIGHTS WAS OUTWEIGHED BY THE ADVANTAGES OF SUCH MODIFICATION."
 {¶ 16} Since all of these errors concern the findings the court was required to make in order to grant the reallocation of parental rights and responsibilities pursuant to R.C. 3109.04, they shall be considered together.
 {¶ 17} In reviewing a trial court's decision regarding reallocation of parenting rights, an appellate court applies an abuse of discretion standard of review. Davis v. Flickinger (1997), 77 Ohio St.3d 415,1997-Ohio-260, 674 N.E.2d 1159. If the award of custody is supported by a substantial amount of credible and competent evidence, the award of custody will not be reversed by an appellate court as against the weight of evidence. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21,550 N.E.2d 178, syllabus. A trial judge is in the best position to observe the demeanor, attitude and credibility of each witness, and this is even more crucial in child custody cases. Flickinger, 77 Ohio St.3d 415, 419. Thus, a reviewing court may not reverse a custody determination unless the trial court has abused its discretion. Pater v. Pater (1992),63 Ohio St.3d 393, 588 N.E.2d 794. The term abuse of discretion implies an unreasonable, arbitrary or unconscionable attitude. Dayton *Page 7 
unconscionable attitude. Dayton ex rel. Scandrick v. McGee (1981),67 Ohio St.2d 356, 359, 423 N.E.2d 1095. An unreasonable decision is one that is not supported by a sound reasoning process. AAAA Enterprises,Inc. v. River Place Community Urban Redevelopment Corp. (1990),50 Ohio St.3d 157, 553 N.E.2d 597. An arbitrary attitude, on the other hand, is one "without adequate determining principle," "not governed by any fixed rules or standard." Dayton ex rel. Scandrick v. McGee (1981),67 Ohio St.2d 356, 359, 423 N.E.2d 1095.
 {¶ 18} This court recently held that the trial court's determination must be supported by sufficient evidence to meet the clear and convincing standard of proof. Bell v. Bell (November 30, 2007), Clark County App. No. 2007 CA 9, 2007-Ohio-6347. In Bell, this court stated that "[c]lear and convincing evidence is that level of proof which would cause the trier of fact to develop a firm belief or conviction as to the facts sought to be proven." Id. at 5, quoting Miller v. Greene CountyChildren's Services Board (2005), 162 Ohio App.3d 416, 2005-Ohio-4035,833 N.E.2d 805 (establishing that the standard of review in an action by an agency to take away custody from the natural parents is clear and convincing evidence). However, as the appellee correctly points out, this court ultimately did apply an abuse of discretion standard inBell. Id. at 9 ("Having thoroughly reviewed the entire record, and there being no change of circumstances of substance, we conclude that the trial court's decision is supported by sufficient evidence and is not against the manifest weight of the evidence. There being no abuse of discretion, [appellant's] first, second and fifth assignments of error are overruled.")
 {¶ 19} This court more recently adopted the abuse of discretion standard as the appropriate standard of review in custody matters.Beismann v. Beismann (March 7, 2008), Montgomery App. No. 22323,2008-Ohio-984. In doing so, we stated that "[t]he discretion which a trial court enjoys *Page 8 
which a trial court enjoys in custody matters should be afforded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." Id. at 4, citing Miller v. Miller (1988),37 Ohio St.3d 71, 74, 523 N.E.2d 846. Accordingly, although there has been some confusion within this district, the appropriate standard of review is abuse of discretion.
 {¶ 20} R.C. 3109.04(E)(1)(a) creates a presumption that a child remains with the custodial parents unless there has been a change of circumstances of the child, the residential parent, or either of the parents subject of a shared parenting decree since the prior decree or based on circumstances that were unknown to the court at the time of the prior decree. See Sabins v. Sabins (April 27, 2001), Montgomery App. No. 18616. The court must then determine that a modification is necessary to serve the best interest of the child. Id. Finally, the court must consider whether one of the circumstances set forth in R.C. 3109.04(E)(1)(a)(i)-(iii) applies. Id. In this case, the parties agree the appropriate consideration is whether the "harm likely to be caused by a change of environment is outweighed by the advantages of the change in environment to the child." R.C. 3109.04(E)(1)(a)(iii).
 {¶ 21} The first and threshold finding a court is required to make is whether there has been a change of circumstances since the prior decree. The prior decree which the statute references is the prior decree that allocated parental rights. Bell v. Bell (Nov. 30, 2007), Clark Co. App. No. 2007 CA 9, 2007-Ohio-6347. In this case, the prior decree is the Judgment Entry and Final Decree of Divorce entered on February 2, 2005 which awarded residential custody to Alison. *Page 9 
Alison.
 {¶ 22} The change must be of substance, not slight or inconsequential.Davis v. Flickinger (1997), 77 Ohio St.3d 415, 1997-Ohio-260,674 N.E.2d 1159. The mere possibility of a change in circumstances in the future will not ordinarily suffice to support modification of a child custody decree. Waggoner v. Waggoner (1996), 111 Ohio App.3d 1, 675 N.E.2d 541, dismissed, appeal not allowed, 77 Ohio St.3d 1445, 671 N.E.2d 1284.
 {¶ 23} A child's maturing may constitute a change in circumstances, but age alone will not be sufficient. Travis v. Travis (August 3, 2007), Clark App. No. 2006 CA 39, 2007-Ohio-4077, citing Basinger v.Basinger (April 30, 1999), Trumbull App. No. 98-T-0080. Additionally, a new marriage alone does not create a change in circumstances. Id. However, a new marriage that creates hostility and frustrates attempts at visitation may be an unforeseen change in circumstances warranting further inquiry. Id. at 419.
 {¶ 24} Frustration of and interference with visitation are factors which support a finding of a change of circumstances. Beekman v.Beekman (1994), 96 Ohio App.3d 783, 645 N.E.2d 1442. "When a court makes a custodial decision, it makes a presumption that the circumstances are such that the residential parent will promote both maternal and paternal affection * * * Where the evidence shows that after the initial decree the residential parent is not living up to the court's presumption and is attempting to poison the relationship between the ex-spouse and the children, this is a change of circumstances that warrants a modification of the prior custody decree." Id. at 789.
 {¶ 25} The trial court made specific findings that there was a change in circumstances. The trial court found that Alison's interference and obstruction with John's visitation as well as her *Page 10 
her repeated attempts to poison the children's relationship with John constituted a change of circumstances. Further, Alison's confrontational actions toward John and Shelly and her "irrational, erratic and generally bizarre behavior regarding the overall situation" constituted a change in circumstances. Finally, the trial court found that Alison's aborted move was a change in circumstances.
 {¶ 26} There is ample evidence in the record regarding the increasingly hostile relationship between the parties and John's new wife. While it was evident at the time of the prior decree that there was some hostility, it is also evident that the hostility has continued to increase. Since John and Shelly's marriage, Alison has called Shelly names such as "bitch" and "whore" in front of the children, teachers, and strangers. She has been openly hostile to Shelly, not only verbally and via email, but in a car chase that ultimately resulted in criminal charges being filed against her. Her behavior during the family meeting with Dr. Williams is a prime example of this hostility. Not only did she tell Dr. Williams in front of everyone in the waiting room that her daughter was not comfortable with Shelly (though it was later obvious to Dr. Williams that Shelly and the child enjoyed a close and affectionate relationship), she also engaged in a public conversation in the waiting room in which she called Shelly a "whore" in front of other patients. She then became annoyed with the wait and interrupted the family session by shaking a door.
 {¶ 27} Further evidence of Alison's hostility is her refusal to allow Shelly to pick up or drop off the children from any activities or appointments. This created difficulties for John, particularly when the children were scheduled to be at different activities at the same time. When John attempted to have Shelly added as an authorized person to pick up and drop off the children, the court refused the request *Page 11 
the request based upon the hostility between the parties.
 {¶ 28} There is also evidence of the deteriorating relationship between John and Alison. Admitted into evidence were several emails between John and Alison concerning issues with the children and visitation. As Dr. Williams points out in his report, John's communications are generally neutral and cooperative while Alison's are often openly hostile.
 {¶ 29} Alison initially listed John as "sperm donor" on her daughter's school enrollment form and has refused to change this designation. On other enrollment forms she failed to list a father at all for the children, or added John's name only after being asked to do so by a school administrator who had met John. John is omitted on school forms as an emergency contact and Alison's parents are instead the emergency contacts for the children. Alison also does not provide school information to John. In order to obtain the children's report cards, he has had to resort to obtaining them directly from the children's teachers.
 {¶ 30} Alison neglected to tell John about annual doctor's appointments for the children, or would tell John after the appointments have taken place so he is unable to attend. She refused to allow John to participate in decisions regarding the children's medical care. Rather than take their son to a urologist as requested by John to address his bed wetting issues, she instead chose to take him to a hypnotist. When their son was placed on medication for his attention deficit disorder at John's insistence, resulting in a marked improvement in their son's performance at school, Alison chose to take their son off the medication. There have also been occasions in which the children have gone to the emergency room when Alison has not notified John.
 {¶ 31} There is also evidence of Alison's obstructing and interfering with John's visitation time *Page 12 
time with the children. Since the initial judgment entry, Alison has violated the court's order on several occasions regarding visitation and other matters. She refused to make the children available to John during his scheduled spring break time, instead taking them on vacation with her. She has also consistently refused to send the children to John's house with adequate clothing, sending either no clothing or clothing which the children had long since outgrown. On at least one occasion John provided Alison with an erroneous schedule for his work days and visitation days. When he brought this error to her attention, she refused to make the change. There have been several occasions when Alison is scheduled to be out of town at a gymnastics meet with their daughter when John has requested that their son be permitted to spend time with him. She has consistently refused to allow John additional time with the children outside of the parenting schedule ordered by the court. This is in contrast with her more cooperative attitude at the final divorce hearing on October 18, 2004 in which she offered to give John additional time with the children. (T.124).
 {¶ 32} Alison complains that John does not attend the children's activities. However, in the past when John and Shelly have attempted to be involved, she has created unpleasant scenes in front of the children and others. Further, she will not allow the children to talk to John and Shelly when she is the one who brings the children to the activity.
 {¶ 33} There is also an issue with regard to the emphasis Alison places on the children's activities. The GAL noted in her report and during her testimony that Alison seemed to place the activities, especially their daughter's gymnastics, well above John's parenting time with the children. In fact, when Alison made the decision to move to Illinois, she indicated to the GAL that John would not be able to see the children during his summer parenting time because it would interfere with her daughter's gymnastics. *Page 13 
 {¶ 34} Finally, Alison's attempted move to Illinois was another factor which led to the trial court's finding of a change in circumstances. Alison made the decision to move to Illinois without the authorization of the court as required by the February 2, 2005 judgment entry. She listed her house with a realtor and investigated school districts and gymnastics programs for the children in Illinois. It was only the involvement of the court which prevented her move with the children. The trial court found, based upon the testimony of the witnesses, that it was likely Alison would still attempt to move away with the children, given the opportunity. When Alison discussed this move with the GAL, she indicated it was to get a fresh start with the children, not for a job opportunity as she later claimed. The GAL felt that this was an effort to further cut John out of the children's lives.
 {¶ 35} Based on the evidence presented, the trial court did not abuse its discretion in determining that a change of circumstances had occurred since the prior decree.
 {¶ 36} Once the trial court has made the threshold finding that there has been a change in circumstances, the court must then make a finding as to the best interest of the children. In making this determination, R.C. 3109.04(F)(1) directs the court to consider all relevant factors, including those factors set forth in R.C. 3109.04(F)(1)(a)-(j). These factors relate primarily to the health and well being of both the child and the parents. Meyer v. Anderson, Miami App. No. 01 CA53, 2002-Ohio-2782. Further, while the court is required to consider these factors, it retains broad discretion in making a best interest determination. Id.
 {¶ 37} In its judgment entry, the court specifically set forth each of the factors enumerated in R.C. 3109.04(F)(1)(a)-(j) and indicated it considered them in reaching its decision. For some of the factors the court set forth specific findings, while other factors indicate only that they were considered by the court. *Page 14 
 {¶ 38} Alison asserts that although the trial court listed each of the factors and indicated it considered them in reaching its decision, the court erred in not providing a thorough analysis of each factor. This court has specifically held that while a court is required to consider the factors set forth in R.C. 3109.04(F)(1)(a)-(j), it is not necessary that the trial court discuss each factor in its judgment entry.Sanders v. Sanders (April 14, 2000), Darke Co. App. No. 99 CA 1506,citing Bunten v. Bunten (1998), 126 Ohio App. 3d 443, 447. See alsoMeyer v. Anderson (April 18, 1997), Miami App. No. 96CA32 (holding in action for modification of shared parenting plan that pursuant to Civ. R. 52 a judgment entry may be general unless a party makes a specific request for separate findings of fact and conclusions of law). Similarly, the Ninth District has held in child custody cases that pursuant to Civ. R. 52 findings of fact are not required unless requested by the parties. See Matis v. Matis (January 12, 2005), Medina App. No. 04CA0025-M, 2005-Ohio-72, citing Morrison v. Morrison (Nov. 15, 2000), Wayne Co. App. No. 00CA0009.
 {¶ 39} No request for specific findings of fact were made in this case. Accordingly, the court must presume regularity in the proceedings below. Scovanner v. Toelke (1923), 119 Ohio St. 256, 163 N.E. 493, paragraph 4 of the syllabus. However, the judgment entry must still refer to some evidence which supports the elements of the applicable statute. Well v. Well (1990), 70 Ohio App.3d 606, 609, 591 N.E.2d 843.
 {¶ 40} In reaching its determination regarding the best interest of the children, the court stated it considered Dr. Williams' report, the GAL report and the factors listed in R.C. 3109.04(F)(1)(a)-(j). Specifically, the trial court discussed R.C. 3109.04(F)(1)(d), which concerns the children's adjustments to their home, school and community. The court expressed concern regarding the stress the children experienced which the court felt was brought on by Alison's behavior, as well as the negative effect *Page 15 
negative effect produced by Alison's constant "running down" of John. The court also considered the change in school districts that would occur should John be granted custody and felt it would be no more upsetting than the change in schools which would have occurred had Alison been able to move to another state.
 {¶ 41} The court also discussed R.C. 3109.04(F)(1)(f), which concerns which parent is more likely to honor and facilitate the court-approved parenting times or visitation/companionship rights, to be particularly relevant. The court found that the evidence overwhelmingly showed that John would be more likely to honor and facilitate parenting times. Based on Alison's history of interfering with John's visitation times, not making the children available at any time other than scheduled visitation time, not including John in decisions regarding the children, and her hostile attitude towards John as evidenced by their email exchanges, there is sufficient evidence to support this determination.
 {¶ 42} Finally, the court discussed 3109.04(F)(1)(j), which concerns whether either parent has established a residence, or is planning to establish a residence outside the state. The court felt that Alison would have moved to Illinois but for the pending motion with the court and given the opportunity would still likely relocate. There is sufficient evidence to support this finding as well. Alison told the GAL that she intended to move in order to get a fresh start, not for a job as she later claimed. Even after the motion for reallocation of parenting rights was filed, Alison still kept her house listed with a realtor for several months.
 {¶ 43} Alison also asserts that the court erred in failing to consider the fact that she was the children's primary caregiver in determining whether a change in custody was in the best interest of the children. Alison cites to Williams-Booker v. Booker (Sept. 14, 2007), Montgomery App. Nos. 21752, 21767, 2007-Ohio-4717, citing In re Maxwell (1982),8 Ohio App.3d 302, 456 N.E.2d 1218 and Kelly v. *Page 16 v. Kelly (March 8, 2002), Miami App. No. 2001-CA-52, 2002-Ohio-1204. InIn re Maxwell this court stressed the importance of the primary caregiver in determining the best interest of the child in the initial award of custody. However, a party's role as the primary caregiver is not given presumptive weight over other relevant factors. Roseburgh v.Roseburgh (August 22, 2008), Ashtabula App. No. 2002-A-0002, 2003-Ohio-4595. This court affirmed the importance of the consideration of the primary caregiver in its later decision in Kelly. Kelly, unlikeIn re Maxwell, did not concern the initial award of custody of the child. Rather, Kelly dealt with custody following termination of a shared parenting plan. We reiterated that once a shared parenting plan is terminated, custody is determined ab initio, as if making the primary custody determination. Id. at 6, citing R.C. 3109.04(E)(2)(d);Patton v. Patton (January 23, 1995), Clinton App. No. CA-94-04-011.
 {¶ 44} The primary caregiver of a child is an important factor to be considered in the initial allocation of parental rights. See In reMaxwell, supra. However, as the Twelfth District noted in discussing the applicability of the Kelly decision to a motion for reallocation of parental rights, the role of primary caregiver is a factor to be considered in determining the best interest of the child in the initial award of custody, not in the reallocation of parental rights pursuant to R.C. 3109.04(E)(1)(a). Terry L. v. Eva E. (March 5, 2007), Madison App. No. CA2006-05-019. 2007-Ohio-916. Accordingly, the trial court was not required to take this factor into consideration in determining the best interest of the children.
 {¶ 45} The court conducted a two day hearing in which both parties presented witnesses and evidence which were relevant to the factors set forth in 3109.04(F)(1)(a)-(j). Further, the parties were able to file written closing arguments. The judge was in a position to assess the credibility of the *Page 17 
witnesses and the weight of the evidence. Since the judge considered the statutory factors concerning the best interest of the children and there is sufficient evidence to support his findings as to the best interest of the children, the trial court did not abuse its discretion in determining that it was in the best interest of the children to effectuate a change of custody,
 {¶ 46} The final finding a trial court is required to make pursuant to 3109.04(E)(1)(a) is that the harm likely to be caused by the change of environment is outweighed by the advantages of the change to the children. R.C. 3109.04(E)(1)(a)(iii). This is a finding based upon the totality of the circumstances. Wheeler v. Wheeler (Oct. 20, 2000), Greene App. No. 2000 CA 27.
 {¶ 47} The trial court made a finding that the harm likely be to caused by a change of environment is outweighed by the advantages of the change of environment. In support, the court found that John would provide a stable, loving and developmental home for the children, which would be the best situation for the children and would provide a better opportunity for the children to experience a more positive, stress free relationship. This court found this environment would outweigh any harms resulting from the change in custody.
 {¶ 48} There is sufficient evidence to support this finding. The emails between John and Alison admitted into evidence show that John has attempted to communicate with Alison regarding the children in a cooperative way, while Alison has been hostile. John has attempted to help the children improve in school by contacting their teachers and arranging meetings when necessary to discuss their progress and to discuss any extra help their son may need at home for his attention deficit disorder. At these meetings, Alison has been hostile, prompting school officials to intervene. John has also attempted to find ways to help *Page 18 
help with his son's bed wetting problems. Rather than punishing him as Alison does, John tries to talk to him before bed about anything that is concerning him.
 {¶ 49} There is also evidence that John and Shelly will promote a better relationship between Alison and the children than Alison promotes between the children and John. While Alison "doesn't discuss Daddy" with the children and demeans Shelly and John in front of the children, Shelly works with the children to make crafts and presents to take home to Alison.
 {¶ 50} Since the court made the required findings and those findings are supported by sufficient evidence, the trial court did not abuse its discretion. Appellant's assignments of error having been overruled in their entirety, the judgment of the trial court is affirmed.
FAIN, J. and GRADY, J., concur.
Copies mailed to:
Hon. Steven L. Hurley
[1] For purposes of clarity, the parties will be referred to by their first names. *Page 1